IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

GENE DRIVER                                                                                           PLAINTIFF

v.                              Civil No. 14-2064

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                         DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

Plaintiff, Gene Driver, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed his DIB application on January 31, 2012, alleging an onset date of July 1, 2011, due to diverticulitis, disorder of the cervical spine, disorder of the right and left shoulder, and obesity. Tr. 103-104, 144-145, 157, 175, 177, 188, 196. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 52-54. An administrative hearing was held on January 9, 2013. Tr. 23-51. Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the hearing, Plaintiff was 52 years old, possessed the equivalent of a high school, and had past relevant work experience as a production line brazer. Tr. 16, 26, 136-143, 158, 167-174.

On February 22, 2013, the ALJ found Plaintiff's diverticulitis, disorder of the cervical spine, disorder of the right and left shoulder, and obesity to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 10-12. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to perform light work involving no overhead reaching. Tr. 12. With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform work as a toy assembler, warehouse checker, and mail clerk. Tr. 17.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 27, 2014. Tr. 1-3. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 10, 11.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age,

education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

On appeal, Plaintiff contends that the ALJ erred by failing to fully develop the record, discrediting his subjective complaints, and determining his RFC. The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

####  A.  Duty to Develop the Record:

In his first point of error, Plaintiff contends that the ALJ erred in failing to develop the record further with regard to his hand tremors and depression. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure her decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).

Contrary to Plaintiff's allegation, the ALJ properly developed the record in this case. The record reveals that Plaintiff suffered from diverticulitis, degenerative disk disease of the cervical spine, shoulder pain, obesity, and depression. Beginning in the summer of 2011, Plaintiff was treated for abdominal pain, lower back pain, and depression. Tr. 236-250, 258-260, 335-341. This resulted in a decreased range of motion, pain, and muscle spasm in the lumbar spine. And, although Plaintiff was consistently noted to have a normal mood and affect, Plaintiff was

prescribed Celexa and Wellbutrin, in addition to Lorcet to treat his pain. Flagyl and Cipro and/or Levaquin were also prescribed to treat Plaintiff's abdominal pain, which was ultimately found to be the result of diverticulitis and required colon resection surgery in February 2012. Tr. 236-250, 300-307. Although initially complicated by a methicillin-resistant staphylococcus aureus ("MRSA") infection in the incision, Plaintiff appears to have successfully recovered from surgery. By March 2012, Plaintiff's diverticulitis was noted to be controlled via medication. Tr. 312-313. Only one additional flare-up of diverticulitis was noted following surgery, in April 2012. Tr. 343-344. He was again prescribed Cipro and Flagyl, and no further problems were noted.

In 2012, Plaintiff was treated from neck/bilateral shoulder and right lateral arm pain on several occasions. From January 3, 2012, until February 2, 2012, Plaintiff underwent chiropractic treatment for right shoulder pain. Tr. 264-296. Progress notes reveal slight improvement, with continued reports of stiffness, weakness, muscle spasms, and pain which he consistently rated as a 7 to a 9 on a 10-point scale.

On January 19, 2012, an MRI of Plaintiff's cervical spine revealed a broad based central disc protrusion at the C3-4 level appearing to contact the anterior aspect of the cord, some possible mild narrowing of the central canal, some mild mass effect on the cord at the C3-4 level, some narrowing of the right foramen due to degenerative change of the uncovertebral joints, and some posterior spurring with a central disc protrusion present at the C4-5 level having probable contact with the anterior aspect of the cord. Tr. 263-264. Physical exams revealed a decreased range of motion in both the lumbar and cervical spine with associated spasm and tenderness in the right acromioclavicular ("AC") joint. Ultimately, Plaintiff was diagnosed with cervical

5

radiculopathy due to multilevel degenerative disc disease with spondylitic ridging and multiple disc protrusions from the C3-4 levels through C6-7 levels and multilevel central stenosis in the mild to moderate range. In March 2012, Plaintiff reported hand weakness with reaching above shoulder level, pain with shoulder abduction, and pain with neck tilt to the right and on extension. Tr. 312-313, 375-376. He was found to be a candidate for epidural steroid injections, and underwent at least three injections between April and May 2012.[1] Tr. 312-313, 347, 375-379, 386-388. Sadly, the injections do not appear to have any lasting impact on his pain, although he was noted to have good strength, motion, and stability in his shoulder in spite of the pain. Tr. 345-346, 379, 385-386. In June, Dr. David Sudbrink was able to reproduce Plaintiff's right shoulder pain by having him reach across his body. Tr. 385. And, on October 25, 2012, Plaintiff sought treatment for continued neck pain radiating into his right arm. Tr. 401.

It is the opinion of the undersigned that the record contains sufficient evidence for the ALJ to have made an informed decision. *See Haley*, 258 F.3d at 748. We can find no evidence of treatment for the hand tremor alleged by Plaintiff. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). And, aside from being diagnosed with depression and prescribed Celexa and Wellbutrin, we can find no evidence that Plaintiff sought out formal mental health treatment.[2] *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or

---

[1] Plaintiff received Cortisone injections into his right shoulder on April 11, 2012, May 9, 2012, and May 22, 2012.

[2] Plaintiff's attempt to excuse his failure to seek out treatment based on his financial inability to do so is meritless. We can find no evidence to suggest that Plaintiff was refused treatment due to his inability to pay or that he sought out mental health services that are available at low-to-no cost. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (it is inconsistent with the degree of pain and disability asserted where no evidence exists that claimant attempted to find any low cost or no cost medical treatment for alleged pain and disability).

other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment); *see also Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis). Repeated examinations have also revealed a normal mood and affect, which are consistent with a finding that Plaintiff's depression was responsive to medication. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

### B.    Credibility Assessment:

Next, Plaintiff takes issue with the ALJ's credibility assessment. Specifically, he alleges that the ALJ failed to develop the record with regard to Plaintiff's receipt of unemployment, failed to consider the side effects of Plaintiff's medications, and failed to provide solid and substantiated reasons for his credibility determination. The ALJ was required to consider all the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of his pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of his medication; and, 5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). Therefore, "[i]f an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that

judgment.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (alterations in original) (quoting *Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006)).

Contrary to the Plaintiff's argument, the ALJ performed a proper credibility analysis under *Palaski*. He identified the following as factors that undermined his credibility: 1) his ability to perform activities of daily living, including the ability to care for his personal hygiene, prepare simple meals, perform general household tasks (clean the house, wash laundry, vacuum), mow the lawn, drive a vehicle, shop in stores for groceries, manage his finances, use a computer, and occasionally babysit for his grandchildren; 2) the absence of objective medical evidence to support Plaintiff's contention of disabling pain; 3) inconsistencies between Plaintiff's contention that standing intensified his pain and other statements he made indicating he could stand and walk for defined periods of time without pain; 4) inconsistencies in Plaintiff's reported ability to lift and carry; 5) the conservative nature of Plaintiff's treatment for his pain (physical therapy, home exercises, ESI's, and relatively low dose pain medication); 6) Plaintiff's responsiveness to treatment, having received some "slight" improvement from chiropractic treatment; 7) Plaintiff's responsiveness to the medications prescribed to treat his diverticulitis as evidenced by infrequent flare-ups and no hospitalizations after 2012; and, 8) Plaintiff's admission that he was laid off from his job and received unemployment benefits until October 2012. Tr. 14, 15, 147-155, 180-183.

We find no merit in the Plaintiff's allegation concerning the ALJ's consideration of his receipt of unemployment benefits. "Applying for unemployment compensation does not prove by itself that the applicant is not disabled. Nevertheless, it is compelling and seriously undermines a claimant's assertion that he is incapable of working in competitive employment."

8

*See, e.g., Johnson v. Chater*, 108 F.3d 178, 180-81 (8th Cir. 1997) ("'[A] claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work.' . . . Applying for unemployment benefits 'may be some evidence, though not conclusive, to negate' a claim of disability." (quoting *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991))).

Here, Plaintiff testified that he was laid off in 2011, after which he received unemployment benefits. Tr. 32. In response to questioning by his attorney, Plaintiff indicated that he "thought" he was able to work at that time. Further, Plaintiff stated that in seeking out work, he did not seek out lighter work than what he had been doing because he "thought" he could still work. Tr. 32. The precise question of whether or not the Plaintiff signed a document with the unemployment commission admitting that he was able to work makes no difference in this case. His testimony makes clear that he "thought" he was able to work at the time he applied for and received unemployment. And, this is inconsistent with his claim of disability beginning in July 2011.

Plaintiff's contention that the ALJ failed to consider the side effects of his medication is also without merit. Although, he contends that the medications made him "draggy," and resulted in a limited ability to concentrate and persist, we can find no evidence that Plaintiff ever reported these side effects to his doctors. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when plaintiff did not complain to doctors that her medication made concentration difficult). As such, we find no error and conclude that the ALJ's credibility determination is supported by substantial evidence.

### C. RFC Determination:

In his last argument, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to account for his pain and medication side effects and fails to incorporate Dr. Capocelli's statement that Plaintiff is "disabled." RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

The ALJ concluded that Plaintiff could perform light work, so long as it did not require him to reach overhead. And, based on the medical evidence and testimony laid out in the previous sections of this opinion, we find that substantial evidence supports this determination.

10

We do not find that the evidence supports Plaintiff's contention that his medications made him "draggy."

As for Dr. Capocelli's opinion, we do note that the ALJ indicated that he was affording his opinion more weight, given that he was a specialist. However, in addition to stating that Plaintiff was disabled, he also indicated that Plaintiff was permanently limited to lifting no more than 15 to 20 pounds. Because this statement and the remainder of the record is more consistent with a determination that Plaintiff could perform light work than a finding of disability, we can find no reversible error. *See Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) (a treating physician's opinion that Plaintiff is "disabled" or "unable to work" does not carry special significance because it invades province of the Commissioner to make the ultimate determination of disability).

### IV.   Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of September 2014.

        /s/ *J. Marschewski*
        HON. JAMES R. MARSCHEWSKI
        CHIEF UNITED STATES MAGISTRATE JUDGE